811 F.Supp. 464 (1992)
AMALGAMATED CLOTHING AND TEXTILE WORKERS UNION, AFL-CIO, CLC, Plaintiff,
v.
STANBURY UNIFORMS, INC., Defendant.
No. 2:92CV61.
United States District Court, E.D. Missouri, N.D.
December 11, 1992.
*465 William M. Franz, III, President, Franz and Franz, St. Louis, MO, for plaintiff.
Steven S. Griswold, Associate, Thomas O. McCarthy, Partner, McMahon and Berger, St. Louis, MO, Donald J. Cairns, Lindner and Marsack, Milwaukee, WI, for defendant.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court pursuant to the Motion of Defendant Stanbury Uniforms, Inc. to Dismiss or, in the Alternative, for Summary Judgment.
For approximately thirty years, Defendant Stanbury Uniforms, Inc. ("Stanbury") operated a manufacturing plant in Brookfield, Missouri. During that time, Plaintiff Amalgamated Clothing & Textile Workers Union, AFL-CIO, CLC ("Union") represented Defendant's Brookfield, Missouri employees in the collective bargaining process. Complaint ¶ 5. On January 1, 1989, Stanbury and the Union entered into a collective bargaining agreement which was to remain in effect until December 31, 1991, and thereafter, unless either party gave notice of its intent to terminate or modify the Agreement on or before October 1, 1991. Article XV of the Agreement provides, in pertinent part:
A. During the term of this Agreement the Employer agrees that it shall not, without the consent of the Union, remove *466 or cause to be removed its present plant from the city in which such plant is located.
The Agreement also provided for an arbitration and grievance procedure.[1]
In September of 1991, Stanbury informed the Union that it intended to terminate the Agreement. Stanbury and the Union negotiated but failed to agree on new terms. By letter dated December 31, 1991, Stanbury notified the Union that it was partially implementing its final offer. On April 15, 1992, Stanbury announced that it was moving its Brookfield operations to Blountstown, Florida. The Union informed Defendant that it considered the move a violation of the Agreement. Complaint ¶ 10. The Union filed a grievance with Stanbury, which was denied. The Union then requested arbitration of the denied grievance, but Stanbury refused to arbitrate the issue. On May 21, 1992, Plaintiff filed this lawsuit. Count I of Plaintiff's complaint is a claim for breach of the collective bargaining agreement. Count II is a suit to compel arbitration.
Defendant moves to dismiss Plaintiff's claims for failure to state a claim for which relief can be granted and for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 6 and 12(b)(1). In the alternative, Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because the Court considers materials outside of the pleadings, this Motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(b).[2]
Rule 56(a) provides that a claimant "may, at any time after the expiration of 20 days from the commencement of the action ... move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed.R.Civ.P. 56(a). Summary judgment should not be granted unless the moving party has established the right to a judgment with such clarity that there is no room for controversy. Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir.1984). Rule 56(c) provides that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). See also Odom v. Tripp, 575 F.Supp. 1491, 1492 (E.D.Mo.1983).

Breach of Contract
Defendant asserts that this Court does not have subject matter jurisdiction over Plaintiff's breach of contract claim because the Agreement terminated on January 1, *467 1992, and the events which gave rise to Plaintiff's complaint occurred after that date. Defendant maintains that Plaintiff's breach of contract claims are better characterized as unfair labor practice claims subject to the exclusive jurisdiction of the National Labor Relations Board. In its Memorandum in Opposition to Defendant's Motion, Plaintiff contends that even if the Agreement was not in effect at the time of the complained of events, the disputed contractual rights vested or accrued before termination and therefore jurisdiction is proper.
Section 301(a) of the Labor Management Relations Act provides:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a) (1978). Jurisdiction under this chapter extends only to contract claims. International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Aerospace Division, UOP, Inc., 580 F.Supp. 641, 644 (D.Conn.1984). Although this Court has jurisdiction to determine a contract's existence and validity, International Brotherhood of Electrical Workers, Local 532 v. Brink Construction Company, 825 F.2d 207, 212 (9th Cir.1987); this Court has jurisdiction over a breach of contract claim only while the agreement is in force. Litton Financial Printing Division, A Division of Litton Business Systems, Inc. v. National Labor Relations Board, ___ U.S. ___, ___, 111 S.Ct. 2215, 2225, 115 L.Ed.2d 177 (1991).
Whether a claim arises under a contract, or whether the claim is one for unfair labor practices was discussed by the Supreme Court in Litton. The Court recognized that "an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." Although an employer is prohibited from unilaterally changing most terms and conditions of employment, "those terms and conditions no longer have force by virtue of the contract." Id. at ___, 111 S.Ct. at 2225. These rights and duties are terms imposed by operation of law under the National Labor Relations Act. A violation of these terms gives rise to an unfair labor practice claim. Such claims are within the exclusive jurisdiction of the National Labor Relations Board. San Diego Buildings Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).
The Union maintains that its right to be consulted before Stanbury relocated the Brookfield plant was a vested or accrued right and therefore this dispute arose under the contract and is properly before the Court. In Litton, the Court stated that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement. Exceptions are determined by contract interpretation. Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement." Litton, ___ U.S. at ___, 111 S.Ct. at 2226. Courts have held that employees' rights vested or accrued under the terms of an expired contract when acts securing the right occurred prior to contract termination. Chauffeurs, Teamsters and Helpers, Local Union 238 v. C.R.S.T., Inc., 795 F.2d 1400, 1403-04 (8th Cir.1986) cert. denied 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (collecting cases). This scenario is distinguished from cases where the right at issue cannot be worked toward or accumulated over time and is "strictly a creature of the collective bargaining agreement." Id. at 1404. Thus, an employee's right to vacation pay accrues during the term of the contract and the right to receive that pay survives contract termination; Teamsters Local Union 688 v. John Meier Co., 718 F.2d 286 (8th Cir.1983); while the right to be discharged for just cause does not survive termination. C.R.S.T., 795 F.2d at 1404.
The Court finds that the Union's right to be consulted prior to plant relocation *468 was strictly a creature of the Agreement. The right to consent to relocation cannot be worked toward or accumulated over time. Therefore, the right could not and did not vest or accrue prior to contract termination. The Agreement between Stanbury and the Union provided that either party could terminate the agreement by notifying the other of its intent to do so by October 1, 1991. Stanbury implemented this provision, and the contract terminated on December 31, 1991. Because the existence of either an enforceable contract or a vested or accrued right is a prerequisite to this Court's jurisdiction over Plaintiff's contract claims, Count I of Plaintiff's complaint must be dismissed for lack of subject matter jurisdiction.

Suit to Compel Arbitration
This Court has jurisdiction to determine whether the arbitration clause in the Agreement was effective after termination and, if appropriate, to compel arbitration. International Brotherhood of Electrical Workers, Local No. 22 Plans A & B v. Nanco Electric, Inc., 790 F.2d 59, 61 (8th Cir.1986).
Stanbury contends that the Union cannot compel arbitration of grievances that arose after the contract expired. The Union maintains that this dispute arose under the Agreement because it had a vested or accrued right to be consulted before the plant was relocated. According to the Union, its rights derive from an oral agreement made in 1982. The Union alleges that Stanbury agreed that "so long as the Company was in operation, it would remain in Brookfield, Missouri, absent the Union's consent to move it elsewhere" and that this promise would be strictly complied with "so long as the Company was operational." Affidavit of Joseph S. Cannavo ¶ 11. The Union claims that in return, the Brookfield employees made concessions to Stanbury in the areas of wages, and vacation and holiday entitlements. Affidavit of Joseph S. Cannavo ¶ 10.
There is a strong presumption favoring arbitrability. In Nolde Brothers, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the Court stated that:
[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.
Id. at 254-55, 97 S.Ct. at 1073-74 (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). However, even given this strong presumption, the Court has emphasized that "[n]o obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." Litton Financial Printing Division, A Division of Litton Business Systems, Inc. v. National Labor Relations Board, ___ U.S. ___, ___, 111 S.Ct. 2215, 2222, 115 L.Ed.2d 177 (1991) (quoting Gateway Coal Co. v. Mine Workers, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974).
In Litton, the Court held that an employer's post-expiration actions could be subject to arbitration if they arose "out of the relation governed by contract." Id. ___ U.S. at ___, 111 S.Ct. at 2224. A post-expiration grievance arises under a contract:
only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.
Litton at ___, 111 S.Ct. at 2225.
As the discussed above, Plaintiff's right to consent to relocation of the Stanbury plant did not vest or accrue under the agreement. Nor did the alleged 1982 agreement create a contractual right that survived termination of the remainder of the Agreement. The Court recognizes the parties have a genuine factual dispute regarding *469 whether this promise was ever made. However, even if such an agreement was made it was superseded by the relocation provision in the parties' most recent Agreement and is no longer enforceable.
The expired Agreement contained a provision addressing the Union's right to consent to a plant relocation. That provision was expressly limited to the term of the Agreement. In addition, the Agreement contained an "entire agreement" clause which provides:
All rights and duties of both parties are specifically expressed in this Agreement, and such expression is all-inclusive. Any benefit existing prior to the Agreement is negated unless specifically incorporated into this agreement. This Agreement constitutes the entire Agreement between the parties and concludes collective bargaining for its term.
Agreement, Article XXIII. Even if Stanbury had agreed in 1982 to operate in Brookfield so long as the plant was operational, that agreement was negated when the parties adopted the more limited provision of the most recent Agreement.
The Union maintains that a waiver of rights must be explicit and cites authority for the proposition that a broadly worded integration clause does not suffice to terminate prior agreements unless there is other evidence indicating that it was the parties' express intention to do so. The cases cited by Plaintiff are distinguishable from the instant case. In all of the cases cited by the Union the employer changed a past practice or condition of employment during the pendency of the contract without first bargaining with the union. TCI of New York, 136 LRRM 1277 (NLRB 1991) (employer excluded certain employees from bonus program); Aeronca, Inc., 105 LRRM 1541 (NLRB 1980) (employer unilaterally discontinued past practice of giving employees Christmas turkeys); Pepsi-Cola Distributing Co., 100 LRRM 1626 (NLRB 1979) (employer discontinued predecessor's practice of giving employees year end bonus). However, in none of these cases did the collective bargaining agreement contain a clause specifically addressing the disputed right. Thus, the NLRB was forced to look outside the terms of the agreement to determine whether the parties' respective "zipper" clauses constituted a waiver of the union's statutory right to bargain before management implemented a change in the disputed term or condition of employment.
In the Agreement at issue in this lawsuit, the parties specifically addressed Stanbury's possible relocation and agreed to a provision limiting the company's relocation options. In light of this express agreement on the issue, the Court finds that any preexisting agreement was negated when the Agreement was executed. Because the Union did not have a right to be consulted before plant relocation after contract termination, Stanbury cannot be compelled to arbitrate its post-termination decision to relocate the Brookfield operations.
ACCORDINGLY,
IT IS HEREBY ORDERED that Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment is GRANTED.
NOTES
[1] Article XIX of the Agreement provides, in pertinent part:

A. Any complaint, grievance or dispute arising out of or relating to the provisions of this Agreement, or the interpretation or application thereof, shall be taken up for adjustment as soon as possible and in the following manner:
* * * * * *
B. Any complaint, grievance or dispute (including a dispute concerning the interpretation or application of the arbitration provision) arising out of or relating to the provisions of this Agreement, or the interpretation or application thereof, which has not been adjusted pursuant to the foregoing procedure, may be referred for arbitration and final determination to an impartial arbitrator, to be designated in writing by the Employer and the Union, in accordance with the procedure set out hereinafter.
* * * * * *
C. Except as expressly provided otherwise in this Agreement, with respect to any dispute subject to arbitration or any claim, demand or act arising under the Agreement which is subject to arbitration, the procedure established in the Agreement for the adjustment thereof shall be the exclusive means for its determination. No proceeding or action in a court of law or equity or the administrative tribunal shall be initiated with respect thereto other than to compel arbitration or to enforce, notify or vacate an award.
[2] On May 21, 1992, the Union filed a motion for Temporary Restraining Order and Preliminary Injunction. In support of that Motion, the Union filed the affidavits of Joseph S. Cannavo and Beulah Clark. The Union refers to these affidavits in its Memorandum in Opposition to Defendant's Motion and the Court has taken them into consideration. Stanbury filed an affidavit and various other documents in support of its Memorandum in Opposition.